[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12265
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cr-00314-MSS-JSS-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NEIL JASON MERRITT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 4, 2018)

Before MARCUS, JULIE CARNES and HULL, Circuit Judges.

PER CURIAM:

Neil Jason Merritt appeals his conviction for conspiracy to possess with

intent to distribute and to distribute five kilograms or more of cocaine while aboard

a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§

70503(a), 70506(a), (b) and 21 U.S.C. § 960(b)(1)(B)(ii), and possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii).  On appeal, Merritt argues that: (1) because equal circumstantial evidence supports a theory of his innocence, his conviction lacks sufficient evidential support and the district court erred by denying his motion for judgment of acquittal; and (2) if his conviction is found to lack sufficient evidence, then we should also vacate the property forfeiture order and return the property to him.  After thorough review, we affirm.

We review de novo the denial of a motion for judgment of acquittal.  United States v. Holmes, 814 F.3d 1246, 1250 (11th Cir. 2016).  We view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor.  United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001).

In reviewing the denial of a motion for acquittal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006).  The jury is free to choose between reasonable conclusions that can be drawn from the trial evidence, United States v. Williams, 865 F.3d 1328, 1344, 1346 (11th Cir. 2017), and we are bound by the jury's credibility determinations

2

and rejections of inferences the defendant raised, United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005). "The evidence does not have to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." Hernandez, 433 F.3d at 1334–35 (quotation marks and alterations omitted). No distinction is made between the weight given to either direct or circumstantial evidence. United States v. Doe, 661 F.3d 550, 560 (11th Cir. 2011).

To prove that a conspiracy exists, "the government must establish that an agreement existed between two or more persons and that the defendant knowingly and voluntarily participated in it." United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002) (quotation marks omitted). A defendant must be aware of the essential elements of the conspiracy, which for conspiracy to possess with intent to distribute means the defendant needs to be aware that he is in possession of the drugs specifically. United States v. Ohayon, 483 F.3d 1281, 1291 (11th Cir. 2007); see United States v. Louis, 861 F.3d 1330, 1332–35 (11th Cir. 2017). A conspiracy may be inferred when crewmen are on a vessel in which the presence of contraband is obvious, which is met by large quantities of contraband on a small vessel. United States v. Fuentes, 877 F.2d 895, 900 (11th Cir. 1989).

To support a conviction for possession with intent to distribute, the government must show that the defendant had (1) knowing (2) possession of drugs

and (3) an intent to distribute them. United States v. Faust, 456 F.3d 1342, 1345 (11th Cir. 2006). All three elements can be proven by either direct or circumstantial evidence. United States v. Poole, 878 F.2d 1389, 1391–92 (11th Cir. 1989). Possession may be actual or constructive. Tinoco, 304 F.3d at 1123. The defendant constructively possessed the contraband if he exercised some measure of dominion or control over it, either exclusively or in association with others. Id. A defendant's intent to distribute may be inferred from the seizure of a large quantity of contraband. Id. The government must prove that the defendant actually knew of the contraband he possessed. Louis, 861 F.3d at 1333–34. Evidence of surrounding circumstances can prove knowledge inferentially. Poole, 878 F.2d at 1392.

In cases involving drug-laden vessels at sea, we use these factors to decide whether the jury could have found a defendant guilty of conspiracy and possession:

> (1) probable length of the voyage, (2) the size of the contraband shipment, (3) the necessarily close relationship between captain and crew, (4) the obviousness of the contraband, and (5) other factors, such as suspicious behavior or diversionary maneuvers before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use.

Tinoco, 304 F.3d at 1123. If the government shows a large quantity of contraband, it carries a light burden that it can meet by proving any one of the other factors. Id.

Here, the district court did not err in denying Merritt's motion for judgment of acquittal because there was more than sufficient evidence to show that he conspired and possessed cocaine with intent to distribute it. For starters, drawing all inferences in the government's favor, a reasonable jury could conclude that the drugs found 50 feet off the Buff (the vessel Merritt and his codefendant were found aboard) had previously been on the boat, had only recently been put into the water, and therefore, were constructively possessed by Merritt. Hansen, 262 F.3d at 1236. As revealed at trial, the cardboard boxes containing the drugs were in good condition when law enforcement officials removed them from the water, indicating they had only recently been placed in the water, and the United States Coast Guard ("USCG") had monitored the Buff for a full day without seeing any other vessels in the vicinity. Officials also found plastic grocery bags labeled "Massey" both throughout the vessel and in the water containing cocaine. Plus, officials found a large pair of jeans in a room on the vessel, and in the jeans, a handwritten spreadsheet with numbers totaling a similar number as the amount of kilograms of cocaine recovered. Those jeans could reasonably be attributed to Merritt, who was larger than his codefendant, the only other person on board the Buff.

As for Merritt's knowledge of the controlled substance, the parties stipulated and agreed that the USCG had seized 93 kilograms of cocaine recovered from international waters in the Caribbean Sea. In addition, the Buff was a relatively

5

small vessel (around 43 feet long), and Merritt and one other crewmember were the only people aboard.  Because the amount of cocaine found was large, and the vessel small, it was reasonable for the jury to infer that Merritt knew of the drugs in the boxes.  See Fuentes, 877 F.2d at 900 ("Where large quantities of contraband are on a small vessel it is most unlikely that the person on board will be ignorant of its presence.") (quotation marks omitted).  This factual scenario is unlike the one in Louis, where we held that the government had presented insufficient evidence of the defendant's knowledge when two sealed cardboard boxes containing drugs had been placed into the back seat of the defendant's car by others.  861 F.3d at 1334.

It was also reasonable for the jury to find beyond a reasonable doubt Merritt's participation in the conspiracy.  Fuentes, 877 F.2d at 900.  In light of the large quantity of drugs recovered in this case, the government only needed to show one Tinoco factor to carry its burden that Merritt knowingly participated in the drug conspiracy and possession.  Tinoco, 304 F.3d at 1123.  Regardless, because Merritt was the owner and captain of a small sailing vessel with only a two-person crew, there was more than enough evidence to satisfy many of the Tinoco factors. For example, the cocaine aboard the Buff would have been obvious to Merritt, given the size of the sailboat relative to the quantity of cocaine and Merritt's status as the captain.  See United States v. Mosquera, 779 F.2d 628, 630 (11th Cir. 1986) (captain is judged by different standard than crewmen and jury could infer that he

6

is aware of nature of his cargo).  Indeed, because Merritt had been entrusted with a significant quantity of cocaine, it was reasonable for the jury to infer that "a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge."  United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir. 1997); see also Mosquera, 779 F.2d at 630.  As we've noted, the jury could also reasonably conclude that the drug ledger in the pocket of a large pair of pants belonged to Merritt because the jury could observe that he was the larger of the two men.  Further, Merritt engaged in suspicious activity both before and after the officers boarded the Buff.  Not only could a reasonable jury infer that he had jettisoned the cocaine from the Buff to avoid it being found by the officers, Merritt's claimed purpose of the voyage -- to travel from Trinidad to Tortola to fix the boat's engine and steering -- was implausible.  As the record indicates, the USCG officers did not detect any significant problems with the Buff's engine or steering, and the boat was traveling under engine power.

On this record, a jury could reasonably conclude beyond a reasonable doubt that Merritt both conspired and substantively possessed cocaine with intent to distribute.  The government did not need to exclude every possibility of Merritt's reasonable hypothesis of innocence.  Hernandez, 433 F.3d at 1335.  Because the verdict is supported by the evidence, we do not reach Merritt's argument regarding the forfeiture of the vessel.  Accordingly, we affirm.

**AFFIRMED**.

8